GORMULLY & JEFFREY MFG. CO. v. SAGER MFG. CO. et al.

(Circuit Court, N. D. New York. June 20, 1898.)

1. PATENTS—INVENTION.
    In a patent for a bicycle saddle, no invention is involved in merely omitting a coiled spring at the pommel end of a prior construction.
2. SAME.
    The Duryea patent, No. 293,725, for an improved bicycle saddle (designed for the old high-wheel vehicle), is void because of anticipation by the Kelley saddle.

87 F.—60

This was a suit in equity by the Gormully & Jeffrey Manufacturing Company against the Sager Manufacturing Company and others for alleged infringement of a patent for a bicycle saddle.

Charles K. Offield, for complainant.

Edmund Wetmore, Howard L. Osgood, and Lawrence E. Sexton, for defendants.

COXE, District Judge. This is an equity action based upon letters patent, No. 293,725, owned by the complainant and granted February 19, 1884, to Charles E. Duryea for an improved bicycle saddle designed for the "ordinary," or high-wheeled vehicle which was in vogue at the date of the patent. The specification and drawings describe and show the saddle attached to the "backbone" or long arm which carries the small rear wheel. The alleged infringing saddle is designed solely for use upon a "safety" bicycle. The specification says that the structure of the patent "consists, essentially, in a flexible seat or saddle having its two extremities attached to an elastic supporting-frame composed, essentially, of two longitudinal parallel springs arranged in such manner as to admit of their passing downward on opposite sides of the backbone or reach, and of their maintaining a longitudinal strain or tension to the seat." The patent contains eight claims. The first five are alleged to be infringed. The first claim is the broadest and sufficiently describes the invention. It is as follows:

"(1) The improved saddle for bicycle, consisting of a flexible seat or saddle proper, and a supporting-spring having two substantially parallel arms with upturned ends attached to the seat, and adapted, as described, to apply a longitudinal tension thereto."

The defenses are the usual ones,—anticipation, want of patentability, noninfringement and defective title. A large number of patents and devices have been introduced by the defendants but the discussion at the argument makes it unnecessary to consider them. The great bulk of the anticipatory literature is condensed in the exhibits known as the "Star" or "Kelley" saddles, which are conceded to be prior to the Duryea. To spend time in the examination of the other exhibits would be like studying with laborious care a multitude of antique and musty volumes when everything contained therein, which bears upon the subject in hand, has been condensed and can be found in the encyclopedia in one short and concise statement.

The Kelley saddles are the best references offered by the defendants and possess all of the features of the Duryea saddle with the single exception that the Kelley saddle, as illustrated by the Exhibit No. 6, is provided with a coiled spring at the narrow, or pommel, end, This proposition is undisputed. The sole question, therefore, upon this branch of the controversy, is this: Assuming that the Kelley saddle is not an exact anticipation, did it require invention to copy the Kelley saddle omitting only the coiled spring? It is thought not. If Duryea had been first in the art it might, possibly, have involved invention to add the coiled spring to his structure. Surely it did not require invention to leave off that feature. The attempt to prove patentable distinction in favor of Duryea by reason of the omission of

this single coil is based upon the most technical and visionary considerations. The only conceivable difference is one of degree. The Kelley saddle may have a greater spring action than the Duryea saddle, but there can be no question that Exhibit No. 6, if made after the Duryea patent, would infringe. The court would not listen with toleration to an argument that Kelley had escaped infringement by the addition of the coil in question. Being made prior, if not an exact anticipation, the change to the Duryea structure was wholly within the province of the skilled mechanic. The situation seems similar to that which was disposed of by this court in Manufacturing Co. v. Walbridge, 60 Fed. 91. The bill is dismissed.